### 23651

D. Cecil LUCAS, Petitioner v. Parker EVATT, Commissioner, S.C. Department of Corrections, and the Attorney General of South Carolina, Respondents.

(416 S.E. (2d) 646)

Supreme Court

*Chief Attorney David I. Bruck, South Carolina Office of Appellate Defense,* Columbia, *for petitioner.*

*Atty. Gen. T. Travis Medlock,* and *Chief Deputy Atty. Gen. Donald J. Zelenka,* Columbia, *for respondents.*

Submitted Jan. 21, 1992; Decided Apr. 27, 1992.

Reh. Den. May 19, 1992.

CHANDLER, Justice:

Petitioner D. Cecil Lucas (Lucas) appeals an Order denying postconviction relief (PCR). We affirm.

On July 25, 1983, Lucas was sentenced to death for the murders of Bill and Evelyn Rayfield. His sentence was affirmed by this Court and the United States Supreme Court on both direct appeal and PCR.[1]

Subsequent to his conviction and sentence, the United States Supreme Court held in *Booth v. Maryland*[2] and *South*

---

[1] *State v. Lucas,* 285 S.C. 37, 328 S.E. (2d) 63, *cert. denied,* 472 U.S. 1012, 105 S. Ct. 2714, 86 L. Ed. (2d) 729 (1985); *Lucas v. Aiken,* 482 U.S. 931, 107 S. Ct. 3220, 96 L. Ed. (2d) 706 (1987).

[2] 482 U.S. 496, 107 S. Ct. 2529, 96 L. Ed. (2d) 440 (1987).

*Carolina v. Gathers*[3] that reference to victim impact evidence was impermissible. Pursuant to these cases, Lucas filed this subsequent PCR action, contending the Solicitor's reference to the Rayfields and their family in the closing argument violated his eighth amendment rights. Upon the denial of PCR, Lucas petitioned for certiorari to this Court.

While his petition was pending, the United States Supreme Court issued *Payne v. Tennessee*,[4] explicitly overruling *Booth* and *Gathers, supra.*

Lucas argues that, notwithstanding *Payne*, both *Booth* and *Gathers* should remain the law of South Carolina. We disagree. In *State v. Johnson*, — S.C. —, 410 S.E. (2d) 547 (1991), we adopted as state law the *Payne* decision. *Payne* holds that "for the jury to assess meaningfully the defendant's moral culpability and blameworthiness, it should have before it at the sentencing phase evidence of the specific harm caused by the defendant." 501 U.S. at —, 111 S. Ct. at 2608, 115 L. Ed. (2d) at 735. Thus, victim impact evidence, as any other relevant evidence, is admissible so long as it is not "so unduly prejudicial that it renders the trial fundamentally unfair. . . ." 501 U.S. at —, 11 S. Ct. at 2608, 115 L. Ed. (2d) at 735.

Adverting to the record, we hold that here the Solicitor's reference to the victims and the impact of their murders upon their family is sanctioned by *Payne*. In closing, the Solicitor argued:

> I submit to you that the pendulum has swung back toward good honest God fearing people to give them some rights in this country and in this state, and not have the rights sitting all on one side. I will tell you and ask you if you know and decide Bill Rayfield and Evelyn Rayfield, good honest hardworking God fearing people. They had a right to live. He was 65 I think and she was 63 or 64. At that age they had raised three fine children. Even this night of having the pleasure of having the grandchildren and playing with them. The prime of life. They worked hard all their life and finally got what they wanted. They got the children what they wanted.

---

[3] 490 U.S. 805, 109 S. Ct. 2207, 104 L. Ed. (2d) 876 (1989).
[4] 501 U.S. —, 111 S. Ct. 2597, 115 L. Ed. (2d) 720 (1991).

You saw Billy [Rayfield] up here. You will have all this stuff with you. Seven grandchildren. Here is the bracelet she wore. The silhouette of each individual grandchild. You don't think that family had a lot of love, a lot of love. You have your pictures over here. Grandchildren. They had every right in this world to live. Who in the world have they harmed? Nobody.

\* \* \* \* \* \* \*

Mr. Givens [defense counsel] said—I couldn't believe it—'Mrs. Lucas, hadn't it been tough on you for the last eight weeks?'

How about this Rayfield family over here? Has it been tough on Mrs. Lucas? Of course it had been tough. Did they say anything about the Rayfield family and these seven grandchildren? Do you know how many tears have been shed since then and how many will be shed from here on out? Sitting up here, 'Has it been tough on you?' They will cry the rest of their life time. 'Has it been tough on you?' Sure it has been tough on her, but not like them.

Think about the Rayfields. Think about what has been taken away. Just think about it, and they ask for mercy. Look at what has been taken away from these seven grandchildren. What in the world did Mr. and Mrs. Rayfield do wrong? Nothing, nothing.

We find nothing in this argument so egregious as to render the trial "fundamentally unfair." As in *Payne*, the Solicitor's argument here was responsive to Lucas' mother's tearful testimony that she loved her son and his arrest and trial had been very hard on her. It described to the jury the consequences of Lucas' criminal act, the impact of the murders upon the Rayfield family and personal characteristics of Bill and Evelyn Rayfield, which *Payne* held to be relevant evidence for jury's consideration.

Accordingly, we affirm the denial of PCR and affirm Lucas' sentence of death.

Affirmed.

HARWELL, C.J., and TOAL and MOORE, JJ., concur.

FINNEY, J., dissenting in separate opinion.

FINNEY, Justice, dissenting:

I dissent from the holding of the majority which denies postconviction relief to the petitioner on the grounds that *Payne v. Tennessee*, 501 U.S. —, 111 S. Ct. 2597, 115 L. Ed. (2d) 720 (1991), and *State v. Johnson*, — S.C. —, 410 S.E. (2d) 547 (1991) (Finney, A.J. dissenting), accord to the state, carte blanche, the right to present victim impact evidence without regard for the unique facts of the particular case.

As I read its decision, the majority's conclusion is premised primarily upon two factors; 1) that in capital sentencing proceedings, *Payne v. Tennessee, supra,* allows the state virtually unlimited discretion in introducing evidence or making argument; and 2) that *State v. Johnson, supra,* adopted the United States Supreme Court's decision in *Payne* as South Carolina law.

The United States Supreme Court took thirty pages of majority-concurring and dissenting opinions to arrive at one principle of constitutional law in *Payne;* namely, that there was no *per se* violation of the Eighth Amendment to the Constitution of the United States when the state, in a particular case, was allowed to introduce victim impact evidence or evidence of specific harm caused by a defendant. My review reflects that *Payne* envisions a case-by-case analysis of each factual situation to determine if there is an Eighth Amendment violation.

This conclusion is further supported by the observation of Chief Justice Rehnquist, writing for the Court, in explaining the basis of the decision in *Payne.* He said:

> The present case is an example of the potential for such unfairness. The capital sentencing jury heard testimony from Payne's girlfriend that they met at church, that he was affectionate, caring, kind to her children, that he was not an abuser of drugs or alcohol, and that it was inconsistent with his character to have committed the murders. Payne's parents testified that he was a good son, and a clinical psychologist testified that Payne was an extremely polite prisoner and suffered from a low IQ. None of this testimony was related to the circumstances of Payne's brutal crimes. In contrast, the only evidence of the impact of Payne's offenses during the sentencing

phase was Nicholas' grandmother's description—in response to a single question—that the child misses his mother and baby sister. Payne argues that the Eighth Amendment commands that the jury's death sentence must be set aside because the jury heard this testimony.

\* \* \* \* \* \*

. . . [J]justice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true.

*Payne v. Tennessee,* 501 U.S. —, 111 S. Ct. 2597, 2608-9, 115 L. Ed. (2d) 720 (1991).

It is clear that in *Payne,* the Court was striving to keep evenly balanced the concept of fairness to both the state and to the accused. In my view, the opinion of the majority in the present case misconstrues the thrust of *Payne.*

With regard to the issue of whether *Payne* was adopted as state law in *State v. Johnson, supra,* a majority of this Court agreed that there was no federal Eighth Amendment bar, *per se,* to the state's introduction of evidence and arguments as to the impact of the crime on the victim and the victim's family. The Court, in *Johnson,* set forth as follows the evidence it concluded the state should be permitted to refute in order to maintain the balance of fairness.

During the penalty phase, Johnson's sister testified that she would visit him at the penitentiary for Christmas. In response, the Solicitor stated that the trooper's family could not go to see him, they could only visit him at the grave.

\* \* \* \* \* \*

We hold that the argument made by the solicitor in this regard is relevant to the jury's decision . . .

*State v. Johnson,* — S.C. —, 410 S.E. (2d) 547, 555 (1991).

Apparently, the majority misapprehends the rationale and intent of *Payne* and *Johnson* as it expands the scope of both decisions. There is grave concern on my part that such an expansion will open a Pandora's box of federal and state constitutional violations as well as contravene both the letter and

spirit of *Payne* and *Johnson*. It is my view that the majority's holding constitutes a substantive denigration of the Eighth Amendment.

I would hold that under the facts of the case at issue, admission of the victim impact evidence violated the Eighth Amendment to the United States Constitution.